UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　Case No.  8:01-cr-302-T-27TBM

**ALBERTO DARIO RODRIGUEZ**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable James D. Whittemore for a Report and Recommendation on **Defendant's Motion to Dismiss Indictment on Constitutional Speedy Trial Grounds and Incorporated Memorandum of Law** (Doc. 17) and the Government's response in opposition (Doc. 18).  An evidentiary hearing on this matter was conducted on August 3, 2006.

By his motion, the Defendant seeks an Order, pursuant to Rules 12(b)(2) and 48(b)(3) of the Federal Rules of Criminal Procedure and the Sixth Amendment to the United States Constitution, dismissing, with prejudice, the one-count Indictment[1] filed in this case on the ground that he was denied his constitutional right to a speedy trial.  Citing four-factors identified by the Supreme Court as necessary for consideration in determining whether a

---

[1] The Indictment, filed on August 16, 2001, charged the Defendant with illegally reentering the United States in violation of 8 U.S.C. § 1326(a), (b)(2).  (Doc. 1).

defendant has been denied his constitutional right to a speedy trial,[2] the Defendant contends dismissal of the Indictment is warranted because the four-plus year delay between the Indictment and trial date in his case is "presumptively prejudicial," he is unaware of any legal reason for the Government's delay in prosecuting him on this offense as he has remained present in the United States since he was "found" in the United States on December 1, 2000, and he has timely asserted the violation of his constitutional right to a speedy trial. In the Defendant's view, these factors weigh heavily against the Government, and, as a result, under Dunn, he is not required to show actual prejudice resulting from the delay because the delay is presumed. (Doc. 17 at 3-8).

The Government misconstrues the nature of the Defendant's motion and argues in response as if the motion was founded on a statute of limitations claim. Thus, the Government argues that the period of time between the issuance of the Indictment on August 16, 2001, until the Defendant's arrest on April 19, 2006, is tolled under 18 U.S.C. § 3290 because the Defendant fled the jurisdiction to avoid prosecution and his whereabouts were unknown. In support of this assertion, the Government alleges that during that period of delay, the Defendant did not return to his usual place of abode, changed his name, used another person's social security number, and concealed himself for the purpose of avoiding arrest so as to not alert the immigration authorities of his whereabouts. The Government makes no direct response to the Defendant's constitutional speedy trial argument. (Doc. 18 at 2-6).

---

[2] See Barker v. Wingo, 407 U.S. 514, 530-32 (1972); see also United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003).

2

I.

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. Const. amend. VI.  In determining whether a defendant's constitutional rights to a speedy trial have been violated, the Eleventh Circuit considers the four-factor balancing test set forth in Barker.  United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006).  The four factors are (1) the length of delay before trial, (2) the reason for the delay, i.e., who is to blame for the delay, (3) whether the defendant asserted his speedy trial rights, and (4) the amount of prejudice suffered by the defendant as a result of the delay.  Barker, 407 U.S. at 530-32; Ingram, 446 F.3d at 1336; Dunn, 345 F.3d at 1296.  Actual prejudice required by the fourth factor may be demonstrated by (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, or (3) the possibility that the accused's defense may be impaired.  Dunn, 345 F.3d at 1296 (quoting United States v. Clark, 83 F.3d 1350, 1354 (11th Cir. 1996)).

Thus, "[t]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . ." Ingram, 446 F.3d at 1336 (quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992)).  "Only if this threshold point is satisfied may the court proceed with the final three factors in the Barker analysis." Id. (quoting Clark, 83 F.3d at 1352).  Delays between the indictment and trial exceeding one year are generally found to be "presumptively prejudicial." Doggett, 505 U.S. at 652 n. 1.  "If, after the threshold inquiry is satisfied and the second and third factor are considered, all three of these factors weigh heavily against the

3

Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." Ingram, 446 F.3d at 1336; see also Dunn, 345 F.3d at 1296; United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999) (quoting United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991)); United States v. Mitchell, 769 F.2d 1544, 1547 (11th Cir. 1985).

II.

The following dates reflected on this court's docket are germane to the motion:

On August 16, 2001, a one-count Indictment was filed, charging the Defendant with illegally reentering the United States in violation of 8 U.S.C. 1326(a), (b)(2);[3]

On August 17, 2001, a warrant was issued for the Defendant's arrest;

On April 19, 2006, the Defendant was arrested on that warrant in the Eastern District of New York;

On May 11, 2006, the Defendant was arraigned in this court and ordered detained; and

On June 22, 2006, the Defendant filed his instant motion.

At the evidentiary hearing on this matter, I.C.E. special agent Nicholas Anderson (hereinafter "Anderson") testified on behalf of the Government and Anna Fanfan testified on the Defendant's behalf. Anderson testified that he first had contact with the Defendant in late

---

[3]The Indictment alleges that the Defendant was convicted of possession of cocaine on or about January 24, 2000, and subsequently deported from the United States on or about March 27, 2000. Thereafter, on December 1, 2000, he was found within the United States without the consent of the appropriate Government official.

1999 or early 2000 at the Pinellas County Jail.  At the time, the Defendant indicated he was an American citizen.  On Anderson's further investigation, that turned out to be false, and the Defendant was thereafter arrested and deported from the United States in or about March 2000.  In December 2000, Anderson was contacted by a probation officer with the Florida Department of Corrections who indicated she had received a person on probation who was believed to be a foreign national.  Before Anderson could act on the information, the individual was released from jail.  In his follow-up investigation, Anderson received fingerprints from the December 2000 arrest of the Defendant and compared them with prints taken at the time of Defendant's earlier removal from the United States.  The prints matched but Anderson could not locate the Defendant thereafter.

In August 2001, the Defendant was indicted on the allegations of illegal reentry.  At that point, his whereabouts were unknown.  Anderson testified that he used his usual law enforcement and commercial databases in an effort to locate the Defendant.  According to the agent, the state probation officer was also attempting to locate the Defendant.  Periodically, every six months or so, an Assistant U.S. Attorney would contact him for updates, and, at those times, he would again check his databases for any current information regarding the Defendant's whereabouts and follow-up on the same.  According to Anderson, he was diligent in his pursuit of any leads that came his way, although he had numerous other cases he had to work as well.

Anderson testified that his check of the databases revealed that the Defendant or a person using his name was employing a social security number actually assigned to a woman

later identified as Dana Vierck (hereinafter "Vierck"). In February 2005, he contacted Vierck and learned that an individual named "Alberto Rodriguez" had been using her social security number since 1996. Anderson checked with the police department in Elgin, Illinois, regarding its investigation of the matter but it had not been productive.

About six months later, Anderson rechecked old addresses and contacts. According to Anderson, one such contact resulted in his speaking with an ex-girlfriend of the Defendant who indicated that she had not had contact with the Defendant. However, shortly thereafter, a person identifying himself as the brother-in-law of the Defendant called and indicated that he had received a phone call from the Defendant the previous December, and the caller gave Anderson a phone number used by the Defendant. Anderson subpoenaed records for the number, and in mid-January 2006, he received subscriber information that indicated the cell phone was listed to a construction company and Albert Rodriguez in Queens Point, New York. In March 2006, the agent asked for assistance in New York. Thereafter, on April 19, 2006, the Defendant was arrested at a residence at 1453 118th Street, College Point, Queens, New York. According to Anderson, a judgment from 1998 for this Defendant reflects his use of Vierck's social security number and her social security number was used in connection with the Defendant's arrest in April 2006.

On cross-examination, the agent indicated that his records contained search results from a commercial database in August 2001 that showed the Defendant with an address in Pinellas County in February 2000. Although the agent testified that he periodically ran such database checks between 2001 and 2005, he had no documentary evidence to establish this.

While he testified that the Assistant U.S. Attorney periodically contacted him for an update, his only documentary evidence to support this was a 2003 letter from AUSA Cothran. Def.'s Ex. 3. The witness also acknowledged that Defendant's "A" file revealed the Defendant's contact with the state of New York and his criminal history likewise revealed prior arrests in New York. See Def.'s Ex. 7. Also within the "A" file was a "Notice to Alien Ordered Excluded by Immigration Judge" dated August 12, 1981, which also reflected an address for the Defendant in New Rochelle, New York. Def.'s Ex 6. Despite this information, before receiving the phone call from the brother-in-law in December 2005, Anderson made no effort to search for the Defendant in New York. Finally, Anderson testified that his most recent query of databases, made this year, revealed the Defendant's address in New York as of March 2002.

Federal Defender investigator Anna Fanfan testified that she conducted a "people search" using a commercial database at the request of defense counsel two days prior to the hearing. This search, using the Defendant's name and date of birth, revealed nineteen addresses. See Def.'s Ex. 1 & 2. This information reflects that since 2000, the Defendant had various addresses in Pinellas County, Florida; Houston, Texas; College Point, N.Y.; and East Elmhurst, N.Y. Def.'s Ex. 1. The query does reflect the Defendant residing at the address where he was ultimately arrested between July 2001 and March 2002.

III

Applying the applicable factors, the Defendant can establish the first and third factors, and this is not seriously disputed by the Government. Indeed, the four-plus year delay between his indictment and the trial in this cause is more than adequate to establish presumptive prejudice under the applicable law. Further there is no question that he has timely raised his claim of the denial of his constitutional right to a speedy trial. The only real dispute is over the reasons for the delay and whether or not the Defendant has been prejudiced by the delay, the second and fourth factors. By his argument, the Government's pursuit of him was so lax and haphazard that the second factor weighs heavily against the Government. On the matter of prejudice, the Defendant offers no evidence of actual prejudice, contending instead that the other factors weigh so heavily in his favor and against the Government that he need not establish actual prejudice.

Upon my consideration of these two factors, the balance tips in favor of the Government and the Defendant cannot prevail on this motion absent a showing of actual prejudice. Given the complete absence of such prejudice, the motion should be denied. By my consideration, even if I were to agree with the Defendant and conclude that the Government could have done more to locate him earlier,[4] I would still conclude from this evidence that the Defendant's conduct significantly contributed to the delay in locating him.

---

[4] While the Government urges that the agent did all he could do under the circumstances, I believe the agent could have done more in checking out Defendant's contacts, especially in New York, earlier than he did. On the other hand, Defendant's own exhibits suggest he changed addresses often and thus I cannot conclude that such additional work would have located him sooner.

Throughout the period of delay, the Defendant was wanted on warrants from this court and the state of Florida for alleged violations of probation. At a minimum, the Defendant appears to have been duty bound to maintain contact with his state probation officer but failed to do so. On the basis of the federal indictment, there is at least probable cause to believe he is unlawfully within the United States and has remained so during this entire period. It is not unreasonable to conclude in the circumstances that even if the Defendant was unaware of the federal indictment, he was aware of the fact that he could be arrested and again removed from the United States for his illegal reentry and thus sought to avoid detection. Moreover, his own exhibits suggest that he changed his residence with some frequency. While the Government's assertion that he used a false name is not supported, it does appears that the Defendant maintained his existence illegally employing a social security number belonging to an innocent third party. Confronted with an extended pretrial delay similar to this one, the Second Circuit has determined that, although a defendant is not under any obligation to take affirmative steps to ensure that he will be tried timely, courts need not ignore a defendant's status as a fugitive in considering whether there has been a violation of his constitutional speedy trial rights. See Rayborn v. Scully, 858 F.2d 84, 90 (2d Cir. 1988).

By my conclusion, given the fact that the Defendant absconded from state probation and has knowingly avoided state and likely federal prosecution, and given that the Government at least made some periodic good-faith efforts to locate the Defendant, I cannot conclude that the second factor weighs *heavily* in favor of the Defendant and against the Government such that the Defendant may assert that he need not show actual prejudice in the

pretrial delay. Here, the Defendant clearly does not establish such prejudice, there is no evidence he suffered oppressive pretrial incarceration, and he has not demonstrated any anxiety or concern brought on by the pendency of this criminal charge. Most significantly however, the Defendant demonstrates no evidence that any defense he might assert to the illegal reentry charge has been impaired by reason of the passage of time. Therefore, because I believe that this case requires a showing of actual prejudice in order to tip the scales in favor of the Defendant and because there is no such actual prejudice, I conclude the motion should be denied.

IV.

Accordingly, for the reasons set forth above, it is **RECOMMENDED** that **Defendant's Motion to Dismiss Indictment on Constitutional Speedy Trial Grounds** (Doc. 17) be **DENIED**.

> Respectfully submitted on this
> 7th day of August 2006.
>
> _____
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service may constitute a

waiver of the issues raised herein and shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
AUSA Donald Hansen, Attorney for the Government
AFPD Alec Fitzgerald Hall, Attorney for Defendant